IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:09-CV-79-GCM

| | |
|---|---|
| ERIE INSURANCE EXCHANGE and ERIE INSURANCE CO., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ORDER |
| FIRST UNITED METHODIST CHURCH of MORGANTON; FIRST UNITED METHODIST CHURCH CHILD DEVELOPMENT CENTER & PRESCHOOL; THE MARION DISTRICT OF THE UNITED METHODIST CHUCH, INC.; TAMMY McGAILLIARD; ROBERT E. ROACH, and C. FRANK GOLDSMITH, JR. as Guardian *ad litem* for Minor Plaintiffs BK, BD, and JB, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** is before the Court upon cross Motions for Summary Judgment. For the reasons set forth below, Defendants' Motions for Summary Judgment are DENIED, and the Plaintiffs' Motion for Summary Judgment is GRANTED.

**I. BACKGROUND**

Plaintiffs, an insurance company, file this action for declaratory judgment claiming that they have no duty to defend or indemnify Defendants, First United Methodist Church of Morganton, First United Methodist Church and Preschool, The Marion District of the United Methodist Church Inc., Tammy McGalliard, and Robert E. Roach (the "Church Defendants") in a North Carolina state court action (the "Goldsmith Lawsuit") to recover for personal injuries brought by the other Defendant, C. Frank

1

Goldsmith as Guardian *ad litem* for minor Plaintiffs BK, BD, and JB. The personal injuries that are the basis of the state court action allegedly stem from inappropriate conduct by a 4-year-old boy, referred to as CS, enrolled in the Church Defendants' preschool. The state court complaint claims that Defendant McGalliard, as Director of the preschool, approved CS's enrollment in the preschool, despite being informed that CS "had been sexually abused and had a history of acting-out sexually with other children." (Exhibit 1, ¶ 20 ). Mr. Goldsmith further alleges that, subsequently, the Church Defendants were negligent in their supervision of CS, thus allowing him to continue this inappropriate "acting-out sexually" on other members of his new preschool class, including minor Plaintiffs, BK, BD, and JB.

On July 9, 2009, the parties entered into stipulations in regard to this declaratory judgment action. (Docket #18). The parties agreed that this Court is to answer the following questions:

a)  Whether the Plaintiffs have an obligation to defend the Church Defendants, or any of them, in the Goldsmith Lawsuit;

b)  Whether the Plaintiffs have an obligation to indemnify the Church Defendants, or any of them, for any settlement or judgment in the Goldsmith Lawsuit; and

c)  Whether the umbrella policy provides the Church Defendants, or any of them, with coverage for the damages resulting from the Goldsmith Lawsuit.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). The party opposing the motion may not rest upon its pleadings but instead must provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its favor. *Id.* at

248. This evidence must be properly authenticated pursuant to Rule 56(e). *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). The movant may be entitled to summary judgment merely by showing that the other side will not be able to prove an essential element of its case with respect to which it has the burden of proof. *Celotex*, 477 U.S. at 322-23.

### III. DISCUSSION

The insurance contract at issue in this case, similar to most insurance contracts, imposes a duty on the insurer to indemnify the insured for any judgments and to defend the insured against any claims that fall within the language of the policy. However, "an insurer's duty to defend is broader than its duty to pay damages." *Lozada v. Phoenix Ins. Co.*, 237 F.Supp.2d 664, 669 (M.D.N.C. 2003)(citing *Estate of Teel by Naddeo v. Darby*, 129 N.C. App. 604, 500 S.E.2d 759 (1998)). This duty to defend is "ordinarily measured by the facts as alleged in the pleadings; [the] duty to pay is measured by the facts ultimately determined at trial." *Id.* at 669 (citing *Waste Management of the Carolinas, Inc. v. Peerless Insurance Co.*, 135 N.C. 688,691, 340 S.E.2d 374,377 (1986). If the pleadings "state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* at 670 (citing *Strickland v. Hughes*, 273 N.C. 481,487, 160 S.E.2d 313,318(1968)).

North Carolina courts employ a "comparison test" to determine whether an insurer has a duty to defend in a lawsuit. *Waste Management of Carolinas* at 378. Applying this test, a court compares the allegations of the complaint with the provisions of the insurance policy to determine whether the facts as alleged are covered or excluded. *Id*. at 378. "The interpretation of the language used in an insurance policy is a question of law that is governed by well-established rules of construction." *Allstate Ins. Co. v. Runyon Chatterton*, 135 N.C. App. 92, 95, 518 S.E.2d 814,816 (1999). As long as the policy language is "clear and unambiguous, the Court must enforce the contract as written." *Id*. at 95. However, if the language is ambiguous or susceptible

3

to more than one interpretation, the policy "must be construed in favor of coverage and against the insurer." *Id*. at 95. The language is not ambiguous merely because the parties "contend for differing meanings to be given to the language." *Id*. at 95. The court is to give the words their "plain and ordinary meaning." *Allstate Insurance Co. v. Bates*, 185 F.Supp.2d 607, 610 (E.D.N.C. 2000). And while it is the burden of the insured to establish that a loss comes within the scope of the policy's coverage, it is the burden of the insurer to show "that an exclusion is applicable." *Id.* at 610. Should the language indicate that the policy "creates a clear exclusion," then that language controls. *Id.* at 610.

### A. The Insurance Policies

The parties do not dispute that at all relevant times the Church Defendants were covered by a Commercial General Liability Policy, and the Trustees of First United Methodist Church were covered by an Umbrella Policy, both issued by the Plaintiffs.[1] The issue is whether the claims against the Church Defendants fall within an Abuse and Molestation Exclusion applicable to both policies.[2] The Abuse and Molestation Exclusion provides:

> This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of:
>
> a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody, or control of any insured; or
> b) The negligent:
>
>   a. Employment;
>   b. Investigation;
>   c. Supervision
>   d. Reporting to the proper authorities, or failure to so report;
>   e. Retention;

---

[1] The Trustees of First United Methodist Church are not named as defendants in this action, but they are represented by counsel. Through counsel, they agree to be bound by the outcome of this litigation. Similarly, Plaintiffs agree to be bound by the outcome of this litigation as it relates to the Trustees.

[2] The parties do not dispute that the language at issue applies to both policies. (See Doc. 10-6, p. 31).

4

of a person whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1, above. (Doc. 10-5, p. 4).

### B. The Applicability of the Exclusion

Defendants argue that the Abuse and Molestation Exclusion is ambiguous, and that the policy must be interepreted to require the Plaintiffs to defend the Church Defendants in the Goldsmith Lawsuit. The Eastern District of North Carolina addressed a similar Abuse and Molestation Exclusion in *Allstate Insurance Co. v. Bates*, *Id.* at 607, finding that the insurance company had no duty to defend the insured married couple where the wife was sued for negligence arising out of her husband's sexual molestation of a six-year-old girl in her care. The Court held that the plain and ordinary meaning of the exclusion was unambiguous and applied the exclusion as a bar to coverage. *Id.* at 613.

Applying the comparison test to this case, the allegations in the Complaint in the Goldsmith Lawsuit describe the "sexually acting out behavior" of CS as "holding or rubbing of genitalia of another child, licking the genitalia of another child, pulling down clothing to expose the genitalia of another child and kissing." (Exhibit 1, ¶ 27). Defendants claim that the exclusion is ambiguous because the terms "abuse" and "molestation" are not defined by the policy, and that these terms do not apply to the behavior engaged in by CS. Specifically, Defendants suggest that "to abuse" or "to molest" requires an element of intent that 4 and 5 year old children are unable to formulate. While the Court is aware that the "molestation" that occurred in *Bates*, unlike our case, involved an adult abusing a child, other courts that have addressed the issue of whether these definitions include an element of intent, in the context of children harmed by other children, have found that it does not. *See, Nautilus Ins. Co. v. Our Camp Inc.*, No. 03-8091, 2005 WL 1332280, at *3, n.2 (10th Cir. June 7, 2009)(upholding district court's verdict for summary judgment for insurance company and finding definitions of "abuse" and "molestation"

5

do not require an element of intent and therefore the same sexual molestation exclusion barred coverage for 10-year-old's claim of negligent supervision against camp for being subjected to "sexual acts" by a fellow mentally impaired camper).

While there are no North Carolina cases on point with the unusual and unfortunate facts of this case, the Supreme Court of Connecticut, in a very similar case, held that an Abuse and Molestation Exclusion precluded an insurance company's duty to defend because the injuries to the victim fell within the plain meaning of the words "abuse" and "molestation" and were therefore unambiguous and subject to the exclusion. *Cmty. Action for Greater Middlesex County, Inc. v. Am. Alliance Ins. Co.*, 254 Conn. 387, 757 A.2d 1074 (2000). That case involved an insured preschool operator seeking reimbursement of defense costs from its insurer, who refused to defend it against charges—including negligent supervision—arising out of the sexual molestation of a 6 year old girl by 3 young male preschoolers. The Abuse and Molestation Exclusion in that case is identical to the one applicable here. The court pointed out that the "grabbing and fondling of a six-year-old girl's vagina" by the three boys in her preschool class was within the plain meaning of "abuse" and "molestation." *Id.* at 1083. In fact, the Connecticut court expressly rejected the argument that the boys' conduct needed to be intended or sexually-motivated to constitute "abuse" or "molestation."

> "There is nothing in the language of the exclusion to indicate that the alleged abuse must be sexually motivated or calculated to arouse the person or persons involved in the offending conduct; the boys' nonconsensual grabbing of [the girl] fall within the plain meaning of the words 'abuse' and 'molestation' irrespective of the boys' subjective state of mind." *Id.* at 83.

*Community Action* is analogous to our case because of the similarity of the claims against the insured, the young ages of the children, and the sexually inappropriate acts engaged in by the children involved. We find the Connecticut court's reasoning to be persuasive and the plain and ordinary meaning of the words

6

"abuse" and "molestation" to be unambiguous. The facts describing the actions of CS clearly fall within the "plain and ordinary meaning" of the words abuse and molestation, and are subject to the exclusion.

Defendants also argue that the exclusion does not apply because the allegations in the complaint do not make any claims for "abuse" or "molestation," but rather "the common theme underlying these allegations is the negligent supervision of the children by the Preschool staff." (Church Defendant's Motion for Summary Judgment, p. 8). However, the exclusion applies to "the injury at issue, not the pleaded cause of action." *Bates* at 613. In other words, "the issue is whether the alleged bodily injury… arose from sexual molestation—not whether another individual's alleged negligence arose out of the sexual molestation." *Id.* at 612. In our case, the exclusion specifically applies to "bodily injury arising out of abuse or molestation by anyone of any person."(Doc. 10-5, p. 4). Here, the injuries to minor plaintiffs BK, BD, and JB are a result of molestation, and therefore fall within the exclusion.

## IV. CONCLUSION

For the reasons stated above, the Plaintiff is not required to defend the Church Defendants, or any of them, in the Goldsmith Action. It therefore follows that the Plaintiff does not have a duty to indemnify the Church Defendants in the Goldsmith Action, and because the Abuse and Molestation Exclusion contained in the Commercial General Liabilty Policy also applies to the Umbrella Policy, by the same reasoning, the Plaintiff has no duty to defend the Trustees.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendants' Motions for Summary Judgment are **DENIED**.

Signed: February 3, 2010

Graham C. Mullen
United States District Judge

7